STATE OF MAINE                                    Business and Consumer Court

CUMBERLAND, SS.                                   DOCKET NO. BCD-FM-15-01 ✓



PATRICIA E. BONNER,              )
                                 )
            Plaintiff            )
                                 )
      v.                         )        Docket No. BCD-FM-15-01
                                 )
JEFF D. EMERSON,                 )
                                 )
            Defendant            )

ORDER ON REMAND

This matter came before the Court pursuant to the Order of the Law Court dated December 4, 2014 remanding the matter to this Court, *see Bonner v. Emerson*, 2014 ME 135, 105 A.3d 1023, along with the subsequently filed motions of Defendant for entry of judgment and to strike dated January 9, 2015, and the Plaintiff's opposition to those motions.    *See* Defendant's Consolidated Motion for Entry of Judgment in Accordance with the Law Court's Remand Instructions and To Strike the Amended and Restated Judgment Proposed by Plaintiff December 19, 2014 [hereinafter "Defendant's Consolidated Motion"]

*Procedural Background*

The Law Court's direction on remand is as follows:

Because the language of paragraph 12(b) of the 2013 divorce judgment is not ambiguous, and because the court amended paragraph 12(b) without the authority to do so, we must vacate the amended judgment and remand for the court to reconsider Bonner's motion to enforce the plain language of paragraph 12(b) of the 2013 judgment.

On remand, the court must interpret the 2013 versions of paragraph 10 and paragraph 12(b) in deciding the parties' post-judgment motions. Because the amended judgment contains improper changes to paragraphs 10 and 12(b), it has been vacated by this opinion. Nonetheless, the March 29, 2013, divorce judgment specifically left some matters undecided, and the court will therefore have to issue a new final judgment. Provisions in the vacated judgment that

1

addressed those remaining disputes, such as paragraph 5(h), and were based on the parties' agreements, should be included in the amended judgment.

*Bonner v. Emerson*, 2014 ME 135, ¶¶ 20-21, 105 A.3d 1023, 1028.

Following remand, the parties acted on the Law Court's suggestion that the case be transferred to the Business and Consumer Docket, and the case was accepted February 15, 2015.[1] Before and after the transfer, both parties made extensive filings, adding to an already voluminous court file.

The parties initially agreed that the sole contested issue on remand was how this court should allocate responsibility for payment of any taxes due on certain grants of Aetna stock to the Defendant that the parties have agreed will be allocated between them on other than a 50-50 basis. The grants at issue and the parties' agreed allocation are as follows:

> 9,456 MSU units granted to Defendant by Aetna in award number MSU 508 on February 2, 2012 that have a final vesting date of February 2, 2014 The parties' agreement is that Defendant is allocated 79.2% of the 9,456 units and Plaintiff is allocated the remaining 20.8%.

> 9,357 MSU units granted to Defendant by Aetna in award number MSU 736 on February 2, 2012 that have a final vesting date of February 2, 2015. The agreement is that Defendant is allocated 86.1% of the 9,357 units and Plaintiff is allocated the remaining 13.9%.

The MSU 508 and 736 stock awards are not mentioned in the Annotated Partial Divorce Judgment of March 2013 ["the Partial Judgment"] because the parties had not yet reached agreement on the units in those awards. They are mentioned, and allocated as indicated above, in the now-vacated Amended Final Judgment. *See* Amended Final Judgment ¶¶ 5(h)(1)-(2), 6(d)(1)-(2).

Although the only contested issue was a narrow one, the process of resolving it proved extraordinarily arduous and contentious, with new sub-issues and areas of disagreement

---

[1] The Plaintiff's application for transfer to the BCD is dated December 19, 2014, but the application was not forwarded to the BCD Clerk until February 13, 2015.

2

surfacing at every juncture. Because neither party has filed a motion to modify the divorce judgment, the court's authority is limited to implementing the parties' agreement, assuming there was in fact an agreement.

Initially, at a conference of counsel in March 2015, the parties and the court agreed that the court could decide the narrow tax liability issue without any evidentiary hearing and without oral argument. However, as this court worked through the parties' complex and voluminous factual and legal arguments, the court decided to schedule oral argument after all. Due to the court's and counsel's schedules, oral argument was not able to be scheduled until June 9, 2015.

At that point, the major issue was how the tax liability for MSU 508 and 726 should be allocated. The Defendant's position in his Motion for Entry of Judgment and at oral argument was that he and the Plaintiff should share equally the tax liability associated with the MSU 508 and 736 stock awards even though the Plaintiff's share of those awards was far less than his. Plaintiff's position was that the parties' share of tax liability should be in the same proportion as their share of the awards themselves. At the June 9 oral argument, the court indicated it appeared there had been no meeting of the minds on the issue. Given that fact, and the further fact that neither party had filed a motion to modify the judgment that would enable the court to resolve an issue that was not agreed upon, the court indicated at the oral argument that it would issue an amendment to the judgment simply reciting the agreed-on percentages and omitting any reference to allocation of tax.

The Defendant then changed his position and agreed to the Plaintiff's position that taxes should be shared in proportion to the parties' respective shares of the MSU 508 and 736 stock awards. In fact, it appears that the Defendant was only conceding to what the parties had previously agreed on. The parties' agreement on MSU 508 and 736 is essentially the same

3

as that for the other Aetna stock awards listed in the Partial Judgment—they have agreed to divide equally the portion of the award that had vested as of January 1, 2013, and to share equally in the tax attributable to the vested portion. Paragraph 12(a) of the Partial Judgment of March 2013 says as much. According to information supplied to the parties by Aetna, 41.6% of MSU 508 and 27.8% of MSU 736 had vested as of January 1, 2013, so the Plaintiff's 20.8% and 13.9% shares of the two stock awards constitute half of the vested portion of those awards.

At the end of the June 9 oral argument, the court asked counsel for the parties to submit proposed orders, including a proposed amendment to the 2013 Partial Judgment. It was then that new issues began to surface.

Defendant's proposed order created a new issue by proposing language for the Amendment to Judgment that would have awarded Plaintiff 20.8% and 13.9% of the *vested portion* of MSU 508 and 736, contrary to the parties' agreement to share the vested portion of the awards equally. After Plaintiff pointed out the problem in a telephonic conference of counsel, Defendant requested a follow-up telephonic conference of counsel in which he conceded the point. Defendant confirmed in a letter from his counsel dated July 13, 2015 that he agrees that Plaintiff's 20.8% and 13.9% shares of the MSU 508 and 736 awards apply to the entire award, not just the vested portion.

Yet another issue then arose during late June and extends into mid-July—how and when tax on Plaintiff's share of the MSU 508 and 736 units is to be paid. In their proposed orders submitted at the court's request, each party has added to her or his proposed order additional provisions on the timing of payments by the other party. Each party objects to the other's additions to or deletions from the other's submittal  As with other issues, the court is limited to interpreting the parties' agreement, and cannot resolve issues the parties have not agreed on. As this Order goes to print, counsel for the parties are still contending in letters to

4

the clerk. The court has not authorized any letters after attorney Dunitz's July 13, 2015 response to attorney Lebel's July 10, 2015 letter, and is proceeding with this Order and the Amendment to Judgment.

*The Reasoning Underlying The Amendment to Judgment*

The Law Court left the Partial Judgment in place as the template on which this court on remand should implement a final judgment that reflects the parties' agreement. Because the parties have elected not to confer any authority on the court to resolve issues not agreed upon, for this court to do anything other than issue a final judgment reflecting the agreement of the parties would likely trigger another remand. Thus, the rest of this Order explains the Amendment to Judgment and how it is based entirely on agreed-upon provisions.

The parties have apparently agreed that the appropriate format for the entry of a final judgment on remand is a document titled Amendment to Judgment, mainly to distinguish it from the now-vacated Amended Final Judgment.

A comparison of the parties' respective proposed orders indicates some areas of agreement and some areas of disagreement. The areas of agreement and disagreement have been clarified through conferences of counsel, including one convened today, and can be summarized as follows:

- The parties have agreed to the lists of personal property that appear at paragraphs 1 and 3 of the court's Amendment to Judgment issued herewith.

- The parties disagree about whether the Amendment to Judgment should repeat the statement in paragraph 12(a) of the Partial Judgment about the vested portion of certain assets being divided based on an assumed termination of employment date of January 1, 2013. Defendant's revision to Plaintiff's order repeated the statement, and Plaintiff in her July 10 letter objected to the repeated statement as unnecessary. The stipulated

5

lists of assets in paragraphs 1 and 3 of the Amendment to Judgment refer to vested units as of January 1, 2013, so there is no need to repeat the statement.

- Paragraph 2 of the Amendment to Judgment derives from paragraph 12(b) of the Partial Judgment. One area of agreement seems to be that paragraph 2 should delete the reference in paragraph 12(b) to Plaintiff receiving one-half of the value of the MSU 508 and 736 awards and being responsible for half of the tax, and substitute a provision requiring Defendant to pay Plaintiff the same percentage share of the value he receives that Plaintiff was awarded as a share of the asset from which the value derives, minus tax attributable to Plaintiff's proportional share. The Amendment to Judgment reflects this wording, by deleting the words "half" and "equal" and "equalization" and substituting words that reflect Plaintiff's proportional share of value and tax.

- The parties also appear to agree that paragraph 12(b) of the Partial Judgment, requiring the parties to share in payment of taxes "when incurred," means that, if Defendant incurs tax attributable to any asset in which Plaintiff has an interest, Plaintiff will pay her share of the tax when Defendant incurs it, even if Defendant has not yet exercised his right to liquidate the asset. The parties appear to agree that tax on the allocated Aetna stock is incurred twice—initially at the time of vesting and again at the time of liquidation.

- However, as of this writing, the parties appear to disagree about the extent and mechanics of Plaintiff's obligation to pay the tax attributable to the shares she is allocated. Defendant's position is that Plaintiff's proportional share of tax is measured by the tax consequence to Defendant of the vesting of an award in which Plaintiff has an interest, whereas Plaintiff contends that the tax consequence of vesting may include components for which she should not share any responsibility. It is possible, perhaps

6

likely, that the same disagreement about the extent of Plaintiff's responsibility for tax will arise when Defendant liquidates shares. A related point of contention is the extent to which Plaintiff's obligation to pay tax should be deemed satisfied by the withholding of tax incurred at the time of vesting by virtue of the liquidation of a portion of the units making up the award in which Plaintiff has an interest. Because these are disputed points that cannot be resolved without a contested hearing that the court lacks authority to convene in the absence of a motion to modify, the Amendment to Judgment is intended to be silent on these issues.

- Lastly, Defendant has proposed, as paragraph D, page 7, a provision that seems intended to make the Amendment to Judgment the controlling document as between it and the Partial Judgment. Plaintiff objects. The Amendment to Judgment omits this paragraph, mainly because it is not agreed to, but also based on the court's view that each of the two judgments should be deemed to control what is contained within it.

IT IS ORDERED:

1. Defendant's Consolidated Motion is granted to the extent of the Amendment to Judgment entered herein, and is otherwise denied.

Pursuant to M.R. Civ. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated July 17, 2015

_____
A. M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 7-20-15
Copies sent via Mail __ Electronically ✓

**Patricia E. Bonnner v. Jeff D. Emerson**

**BCD-FM-15-01**

**Patricia E Bonner**

### Plaintiff

Counsel:                         *Ronald Lebel, Esq.*
                                           95 Main St
                                         Auburn, ME 04210

**Jeff D. Emerson**

### Defendant

Counsel:                         *Jonathan Dunitz, Esq.*
                                           One Portland Square
                                         PO Box 586
                                         Portland, ME 04112-0568